R. B. BEELER *v.* A. M. NANCE *et al.*

(*Knoxville.* September Term, 1912.)

1. **HOMESTEAD. Right in land with less than one thousand dollars is treated as an assigned and vested homestead.**

Where the head of a family, a married man, owns only one tract of land worth less than one thousand dollars, his homestead right therein is to be treated as an assigned homestead and a vested estate in the land. (*Post, pp.* 591, 592.)

Cases cited and approved: Gray v. Baird, 4 Lea, 212; Arnold v. Jones, 9 Lea, 545; Burnett v. Austin, 10 Lea, 564; Briscoe v. Vaughn, 103 Tenn., 314; Delk v. Yelton, 103 Tenn., 479; Carver v. Maxwell, 110 Tenn., 82.

2. **SAME. Same. Whether unassigned, or treated as assigned, can only be conveyed by joint deed of husband and wife, when that relation, exists.**

The homestead right, whether it be a mere floating right in unassigned homestead land, or such right as an estate for life in the specific tract of land by reason of facts which the law treats as an assignment of the homestead in that tract, can only be conveyed by the joint deed of husband and wife, when that relation exists. (*Post, p.* 592.)

Code cited and construed: Sec. 3798 (S.); sec. 2935 (M. & V.); sec. 2114a (T. & S.).

Constitution cited and construed: Art. 11, sec. 11.

Case cited and approved: Cox v. Keathley, 99 Tenn., 523.

3. **SAME. Lease of homestead land is not forfeited by lessors' subsequent removal from State, when.**

Where a husband and wife, having a homestead estate in certain land for and during the life of the survivor, after which the title in fee is to pass to a remainderman, leased the land to defendants during the life of the wife, and thereafter removed

Beeler v. Nance.

to another State, such removal and termination of residence and citizenship in this State, and their acquisition of the same in another State, did not work a forfeiture of said lease. (*Post*, *pp.* 592-598.)

Case cited and approved: Cowan v. Carson, 101 Tenn., 526; Briscoe v. Vaughn, 103 Tenn., 308; Coile v. Hudgins, 109 Tenn., 223, citing Carrigan v. Rowell, 96 Tenn., 185.

4. SAME. Lease or sale by owner before any act of abandonment.

It is settled beyond dispute in this State that the owner of a homestead may pass a good title to a lessee or purchaser from him by a lease or sale before any act of abandonment. (*Post*, *p.* 598.)

5. SAME. Lease is not affected or forfeited by mere intention to remove from State; for actual removal is necessary.

The lease of a homestead estate is not affected or forfeited by the fact that the lessor, at the time the lease was made, purposed and intended to leave the State; for the intention must be accompanied by actual removal. (*Post*, *pp.* 599, 600.)

Case cited and approved: Vaughn v. Ballentine, 1 Shannon's Cases, 596.

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—WILL D. WRIGHT, Chancellor.

STEINMETZ, BEELER & MITCHELL and PICKLE, TURNER & KENNERLY, for complainant.

SHIELDS, CATES & MOUNTCASTLE, for defendants.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

This case presents a contest between a remainderman, as complainant, and the defendants, Nance and Nicely, as lessees of a homestead interest in a tract of land. W. H. Cadle was the owner in fee of this tract of land about twenty years before the filing of the present bill. At that time he owned no other real estate. He was married and the head of a family, and was entitled by law to a homestead interest in this tract of land, which was then of a value less than $1,000, and has never exceeded that value.

About that time, while so circumstanced, and while the owner of this homestead interest, he executed a trust deed, in which his wife did not join. He failed to pay the debt secured by this trust deed, and the land was sold by the trustee pursuant to the terms of the trust deed, and bought in by the beneficiary in the trust deed, and under that sale complainant claims the land by a chain of conveyances duly recorded. The trust deed and the deed from the trustee to the beneficiary, and, indeed, each of the conveyances in complainant's chain of title, purports to convey the fee-simple title to the land.

It is clear that the chain of conveyances under which complainant claims did not effect the conveyance, either of his homestead right in the land during his life, nor the expectancy of his wife of a homestead interest in the same land during her life, in the event she should survive her husband, for the reason that, under our au-

thorities and the facts of this case as stated, the homestead interest of W. H. Cadle in the land is to be treated as an assigned homestead and a vested estate in the land. *Burnett* v. *Austin,* 10 Lea, 564; *Gray* v. *Baird,* 4 Lea, 212; *Arnold* v. *Jones,* 9 Lea, 545; *Delk* v. *Yelton,* 103 Tenn., 479, 53 S. W., 729; *Briscoe* v. *Vaughn,* 103 Tenn., 314, 52 S. W., 1068; *Carver* v. *Maxwell,* 110 Tenn., 82, 71 S. W., 752.

And for the further reason that the homestead right, whether it be a mere floating right in an unassigned homestead, or such right as under our cases has arisen to the dignity of an estate for life in the specific tract of land by reason of facts which the law will treat as an assignment of the homestead in that tract, can only be conveyed by the joint deed of husband and wife, when that relation exists. Section 11, art. 11, Constitution 1870; section 3798, Shannon's Code; *Cox* v. *Keathley,* 99 Tenn., 523, 42 S. W., 437.

At the time W. H. Cadle executed the trust deed, which was the beginning of the chain of conveyances under which complainant claims, he was residing upon the land in controversy, and he continued so to do after the date March 27, 1907. The remainderman, during all these years, evidently recognized the existence of the homestead estate in the tract of land, and made no attempt, so far as the record shows, to interfere with the enjoyment of that estate by Cadle.

This brings us to a consideration of the main question arising in this case, which is the right of the defendants to hold possession of the land under the lease made by

Beeler v. Nance.

W. H. Cadle and his wife, Sarah E. Cadle, dated March 27, 1907, a copy of which is exhibited with complainant's bill. The right of the defendants to hold under this lease is assailed by complainant in his bill, on the ground that the lease was forfeited by reason of the abandonment by Cadle and wife of their residence and citizenship in the State of Tennessee, and their acquisition of a like *status* in the State of Oregon. It is admitted in the bill that both the abandonment of the Tennessee residence and citizenship and the acquisition of a like *status* in Oregon occurred after the execution and delivery of the lease. We think the contention made by the complainant cannot be maintained. In *Coile* v. *Hudgins*, 109 Tenn., 223, 70 S. W., 57, it is said:

"The question which arises in this case is this: When the homesteader, after her homestead is assigned by metes and bounds, becomes domiciled in another State, but continues to reecive the rents and profits of the homestead, and by her tenants to occupy it, is the homestead estate forfeited and defeated by the homesteader's becoming domiciled in the foreign State, notwithstanding her intention to retain the homestead, and the benefit of the same?"

"In the case of *Carrigan* v. *Rowell*, 96 Tenn., 185, 34 S. W., 4, the homestead was declared forfeited by the acquisition of the foreign domicile; but in that case there was no claiming of the benefits of receipts of the rents after the removal from the State, so far as the case shows.

"The court is of the opinion that the homesteader may

126 Tenn. 38

sell, rent, or lease his homestead while a resident of Tennessee, and the vendee will be entitled to hold, if he be a resident of Tennessee. Nevertheless, if the owner of the homestead, while such owner, removes from the State and acquires a domicile in another State, he will forfeit such homestead estate."

The lease under which defendants hold is dated March 27, 1907, and is between W. H. Cadle and wife, Sarah E. Cadle, of Grainger county, Tenn., as parties of the first part, and the defendants (naming them), of the same county and State, as parties of the second part. It acknowledges a cash consideration of $1 and other valuable considerations to the first party in hand paid, for which consideration it recites that the first parties have "leased, rented, and let" to the second parties a certain tract of land, and it then describes the land, locating it in Grainger county, Tenn. The remaining material parts of the lease are as follows:

"To have and to hold said land for and during the life of Mrs. Sarah E. Cadle for the purpose of farming said lands; that is, all the cleared land is to be cultivated and farmed in such a manner as shall suit said second parties, with the same rights and privileges that we have ourselves as to the manner of cultivating said lands, and have the use of such timber as shall be necessary to keep the farm in good repair and the use of firewood," etc.

"And the second parties agree with the first parties that, at any time they shall be able to fully remove the cloud now existing on their title by a suit or suits in the

courts of Tennessee, or otherwise, and be in condition to make said second party a good and warranty deed for said lands, then and in that event first party agrees to accept as full consideration price the sum of one thousand dollars cash, and the second party agrees, on delivery of a proper warranty deed, to pay the first party the sum of one thousand dollars at any time they shall present them with a properly acknowledged deed conveying said land with all general warranties.

"The time of this option is not limited to any number of years, but may be closed any time during the life of Mrs. Sarah E. Cadle."

The argument for complainant in brief is that, although Cadle and wife might, at the time of the making of the lease, have made a valid assignment or sale to defendants of the entire estate in expectancy of Mrs. Cadle in the event she survived her husband, yet that this was not done; the lease by its terms being only operative during the life of Mrs. Cadle, and thereby leaving in the lessor Cadle an estate for his life in the event he should survive his wife. So it is said, some part of the estate being by the lease left in Cadle, his abandonment of residence and citizenship in Tennessee and acquisition of that *status* in another State destroys his entire homestead estate in the land, and thereby works a forfeiture of the lease to defendants.

This argument is plausible; but is it sound? We think not. It is clear that, under our cases, Cadle and wife had the legal right to sell or lease the whole term of the life estate, which was vested in him in the land.

and also such expectancy of a life estate as she had contingent on her survival of her husband. This much is conceded in the argument for complainant, and, this being conceded, it seems clearly to follow that, having the right and power to convey the whole, they had the right and power to convey any part of the whole, and if, as conceded, the abandonment of citizenship and residence in Tennessee by Cadle and wife would not have worked a forfeiture of their prior conveyance of the whole estate, we think the sound view is that such abandonment could only operate as a forfeiture of such part of the estate as the lease left in W. H. Cadle. But whether any part of the estate is in fact left in him is a question which cannot be determined on the record before us. It appears by the averments of the bill that both Cadle and wife are yet alive. If Cadle survives his wife, it might be said that the lease left some part of the estate in him, which might have conveyed by it; but, if Mrs. Cadle survives her husband, the contrary would be true, so far as the actual effect of the lease is concerned. It is said that the title of the lessees is dependent upon the title of the lessors, and this is true. And it is also true that, at the date of the lease, the title of the lessors was ample to support the estate which they granted to the lessees. And that estate which they granted to the lessees, being an estate of right in the lessors at the time of the grant, became a vested estate in the lessees for and during the term named in the lease, to wit, for and during the term of Mrs. Cadle's life. No act of the lessors, done after they communicated title to the

lessees, can defeat that title, and any forfeiture wrought by an act of the lessors after they communicated that title could only become operative upon such interest in the life estate as did not pass under the lease.

How is the argument that the forfeiture, though occurring after the lease, relates back to it, and destroys the estate of the tenant, to be reconciled with the utterance of this court in *Coile* v. *Hudgins,* supra, where it says:

"The homesteader may sell, rent, or lease his homestead while a resident of Tennessee, and the vendee will be entitled to hold, if he be a resident of Tennessee."

And how is such argument to be reconciled with the opinion in *Cowan, McClung & Co.* v. *Carson,* 101 Tenn., 526, 50 S. W., 742, which said:

"The widow to whom homestead is assigned may alien her right in the property without working a forfeiture. The alienee will take as she does, and hold exactly as she did; since the act of 1879, this right does not depend on occupancy, and, this being true, it has not been doubted that the widow owning this right, if her convenience or interest suggested, can lease her homestead, and use the rents instead of the property itself. A lease is a disposition of the property for a term, and, if such disposition is valid, then we think there can be no doubt that an alienation, as in the present case, will not work a forfeiture."

The argument of complainant is in the teeth of the foregoing deliverances of this court. It is true, as he

insists, that in *Coile* v. *Hudgins,* supra, this court added to what we have just quoted these words:

"Nevertheless, if the owner of the homestead, while such owner, moves from the State and acquires a domi-cile in another State, he will forfeit such homestead estate."

But it is not to be understood, from the words last quoted, that the act of one who has owned a homestead estate, but who has sold or leased it for a valuable consideration, could work a forfeiture of the estate which he had vested in his vendee or tenant prior to his act of abandonment of residence and citizenship in this State; and this view is equally aplicable, and logically resultant, whether the sale or lease be of the whole or part only of the homestead estate.

In *Briscoe* v. *Vaughn,* 103 Tenn., 308, 52 S. W., 1068, it is said:

"Abandonment is a question of law, it is true; but it is based upon the intent of the parties, and the sale of a homestead is no more an abandonment of such land or benefits than is a sale and conveyance of a fee-simple estate an abandonment of such land or benefits to be derived from it."

The right of the owner of a homestead to pass good title to a lessee or purchaser from him by sale or lease before any act of abandonment is settled beyond dispute in this State; and it would be nothing short of a denial of this right to now say that any act of the vendor or lessor of such an estate subsequent in date to its passage out of him could in any wise affect its validity; and, if

Beeler v. Nance.

this be true in a case where the whole estate of the homestead owner is involved, it must apply with equal force where part only is involved. His subsequent abandonment of his rights as a citizen of this State can no more be allowed to affect the validity of the title he has passed for value to another person in the one case than in the other. He can only forfeit what is left in him in any case.

It is next said, for complainant, that when the lease in question was made the lessors purposed and intended to leave the State, and that, under such facts, the lease contract could not have effect to preserve and keep alive the homestead estate. This contention is, we think, conclusively answered by an opinion of this court, which was delivered in a case where it was insisted for the plaintiff that certain property of the defendant, which was exempt from execution or attachment in the hands of the head of a family, was, under the facts of that case, liable to attachment. The goods had been put on board cars for the purpose of removing them from the place of residence of the debtor in this State to a point in another State to which the debtor contemplated moving. This court said:

"The circuit judge held defendant was still a citizen of Tennessee and entitled to the benefit of our exemption laws. In this he was unquestionably correct. A fixed purpose to change one's domicile is not such a change as deprives the party of his rights as a citizen of the State wherein he has obtained a domicile by previous residence. To do this, he must have carried out that

purpose by actual removal from the State." *Vaughn v. Ballentine*, 1 Shan. Cas., 596.

The charge in the bill that the lease was without consideration is met by the recital in the lease exhibited with the bill, which shows a valuable consideration paid.

What we have said disposes of all the questions before us on defendants' petition for *certiorari*. Several questions made by them in the chancery court are not here, as the defendants did not appeal from the chancellor's decree, and the appeal prayed for by the complainant was limited to the questions which we have discussed.

It results from what we have said that the decree of the court of civil appeals must be reversed, and the decree of the chancellor affirmed.

MR. CHIEF JUSTICE SHIELDS, being incompetent did not participate in the consideration of this case. MR. JUSTICE LANSDEN dissents from the opinion of the majority of the court, on the ground that this case presents an extension of the former adjudications by this court on this subject.